**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

WILLIAM A. SIEBER; and
RICHARD A. CALLENDER,

      Plaintiffs,

v.

COSMIC PET, LLC,

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiffs, by and through undersigned counsel, respectfully allege for their Complaint and Jury Demand as follows:

## I.    INTRODUCTION

1. On October 1, 2020, Defendant Cosmic Pet LLC ("Cosmic Pet" or the "Company") unlawfully and willfully terminated sales executives William Sieber, age 63, and Richard Callender, age 61, based on their age.

2. Mr. Sieber and Mr. Callender were excellent sales representatives who brought in millions of dollars of revenue for Cosmic Pet and its predecessors when the Company fired them for the pretextual reason, asserting that their terminations were because of a cost-saving reduction in force ("RIF") measure.

3. Despite managing around 60 accounts combined for Cosmic Pet, neither Mr. Sieber nor Mr. Callender had ever received any sort of disciplinary write-up, performance improvement plan, or faced progressive discipline, but instead had earned numerous accolades and bonuses. Their performance had at all times been excellent.

4. As a result of Defendants' willful illegal conduct, Plaintiffs have suffered loss of wages and benefits, humiliation, severe emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

## II.     JURISDICTION AND VENUE

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Cosmic Pet does systematic and continuous business throughout the United States, including within Colorado, and a substantial part of the employment practices alleged by Mr. Sieber herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Mr. Callender's and Mr. Sieber's terminations were part of the same company plan to terminate its older salespeople despite those employees' superb performance.

7. This action is authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621, *et seq*.

## III.     ADMINISTRATIVE PREREQUISITES

8. Plaintiffs timely filed Charges of Discrimination with the Equal Employment Opportunity Commission and more than 60 days have passed since the filing of their charges. Thus, all administrative prerequisites have been met and exhausted. This case is timely filed.

## IV.     PARTIES

9. William Sieber, born in 1957, is a citizen of the United States and was, at all relevant times, a resident of and domiciled in the State of Colorado, and a current or former employee of Cosmic Pet.

10. Richard Callender, born in 1959, is a citizen of the United States and was, at all relevant times, a resident of and domiciled in the State of New York, and a current or former employee of Cosmic Pet.

11. Defendant Cosmic Pet, LLC describes itself on its website as "a multi-branded, international company that designs and manufactures pet products for cats and dogs. Formerly known as Hyper Pet, R2P Pet, OurPets and Pet Fusion. The combined company is an industry leader of innovative and stimulating pet toys and accessories that help strengthen the bond between pets and their parents." https://www.cosmicpet.com/pages/about-us (last visited 12/13/2021). Cosmic Pet is headquartered in Wichita, KS, and has continuously been an employer within the meaning of the ADEA at all relevant times.

## V.   FACTUAL ALLEGATIONS

**William Sieber's career with Cosmic Pet**

12. Mr. Sieber had a long and distinguished career as a salesperson, working successfully in the sales and pet supply industry for over 20 years.

13. Mr. Sieber began his employment with R2P Pet approximately five years ago, which was then purchased by Guardian Capital Partners in March 2019 and merged into Cosmic Pet.

14. Mr. Sieber was a Vice President of Pet Specialty at Cosmic Pet at the time of his firing on October 1, 2020 and worked full-time from home in Colorado.

15. Mr. Sieber managed 29 sales accounts for Cosmic Pet. Mr. Sieber directly managed two "Key Accounts" for the company (Pet Valu/Pet Supermarket and Tractor Supply Co.).

16. No sales representative at Cosmic Pet managed more than two "Key Accounts."

3

17. Mr. Sieber managed eight (8) accounts in the company's top 38 (from which 92% of Cosmic Pet's revenue was generated) out of more than 300 total accounts.

18. Mr. Sieber was an exceptional performer, with sales far ahead of the curve. He earned bonuses each of the years he was employed by Cosmic Pet, including an approximately $40,000 bonus in 2019—the last full calendar year he was employed.

19. Mr. Sieber never received any sort of write-up, performance improvement plan, performance counseling, or progressive discipline. He never received so much as a hint of dissatisfaction with his performance throughout his tenure with Cosmic Pet.

20. On October 1, 2020, without any warning, Cosmic Pet fired Mr. Sieber. Even when terminating Mr. Sieber, representatives for Cosmic Pet stated that his performance was **not** a factor in the decision.

21. Until Cosmic Pet fired him, Mr. Sieber was the oldest employee on the Cosmic Pet Sales staff of 12 individuals. Co-Plaintiff Mr. Callender was the second-oldest employee. Most of the other sales employees are in their 30s or 40s.

**Richard Callender's career with Cosmic Pet**

22. Mr. Callender brought decades of sales experience to Cosmic Pet, working in the sales industry for over 30 years.

23. Mr. Callender was employed by the company or its predecessors for approximately 8.5 years, previously having worked for Our Pets, which was also bought by Guardian Capital Partners in 2019 and merged into Cosmic Pet in 2019.

24. Mr. Callender was Head of Grocery at Cosmic Pet and managed each of the grocery accounts in the entire U.S., a major source of Cosmic Pet's annual revenue.

25. Mr. Callender managed 27 accounts for Cosmic Pet, including two "Key Accounts" (Corporate Kroger and Kroger-branded Central Pet).

26. Mr. Callender received bonuses for hitting his targets each year of his employment. His sales numbers, like Mr. Sieber's, were typically far ahead of the curve.

27. In 2019, Mr. Callender received a substantial bonus of over $15,000. Also that year, Mr. Callender became the first sales representative to get pet CBD products on the shelf of a retailer – a key goal for the company.

28. Even the pandemic did not affect his sales numbers. In his position as Head of Grocery, Mr. Callender's accounts remained active throughout 2020 given the status of grocery stores as essential businesses.

29. Due to this, Mr. Callender was projected to hit total sales of $8,600,000 in 2020, about 120% of his sales the previous year.

30. Such astronomical projections may yet be understated, as Q4 for 2020 (for which plaintiffs do not have sales data given their terminations of employment) is generally the highest volume quarter of the year, typically accounting for nearly half of Mr. Callender's sales for the entire year.

31. Additionally, Mr. Callender never received any sort of disciplinary write-up, performance improvement plan, performance counseling, or progressive discipline.

32. Indeed, in March 2020, Mr. Callender received a "merit increase" in his compensation for his 2019 results and his "ongoing commitment to Cosmic Pet and growing our grocery channel."

33. On October 1, 2020, without any warning, Cosmic Pet fired Mr. Callender. Even when terminating Mr. Callender, representatives for Cosmic Pet stated that performance was **not** a factor in the decision.

34. At the time of his termination, Mr. Callender was the highest performing salesperson in the entire company.

35. Until Cosmic Pet fired him, Mr. Callender was the second-oldest employee on the Cosmic Pet Sales staff of 12 individuals. Co-Plaintiff Sieber was the oldest. Most of the other sales employees are in their 30s or 40s.

**Events preceding Mr. Sieber and Mr. Callender's terminations**

36. Cosmic Pet was motivated wholly or in material part by Messrs. Sieber's and Callender's age. The company used a purported RIF as a pretextual basis to fire Mr. Sieber and Mr. Callender when, in reality, similarly situated younger, but less qualified and/or lower performing, salespeople were treated more favorably than Messrs. Sieber and Callender.

37. Following the loosening of pandemic-related restrictions in the United States, Cosmic Pet had its best monthly sales figures ever in July and August 2020, a fact discussed with Mr. Sieber and Mr. Callender and others during a weekly Monday morning conference call with 42-year-old President Nick Yerton in early September.

38. In that call, Mr. Yerton also observed that Cosmic Pet appeared poised to recover much better than other companies and that the company was proud that it did not have to lay off or even reduce the salaries of anyone on the sales staff.

39. Mr. Yerton also said that the sales team was exceeding all of management's expectations for sales, and everyone was on track for big bonuses at the end of the year.

40. Mr. Sieber and Mr. Callender were terminated less than a month later.

### **Cosmic Pet used a purported reduction in force as a pretextual reason to terminate Mr. Sieber and Mr. Callender based on their ages**

41. Even though Mr. Sieber and Mr. Callender were excellent sales representatives who brought in millions of dollars of revenue for Cosmic Pet and its predecessors each year, Cosmic Pet told them on October 1, 2020, that the company was terminating their employment, effective immediately.

42. Cosmic Pet has stated that Mr. Sieber and Mr. Callender were terminated purportedly as part of a "cost-saving" RIF, after completing a review of "management structure, account alignments, and budget responsibilities in the Sales department."

43. Mr. Sieber and Mr. Callender, the two oldest employees, were the only members of the twelve-person sales staff to have their positions eliminated.

44. Cosmic pet claimed it terminated Mr. Sieber and Mr. Callender to cut costs due to its storefront and online business model, known as "bricks and clicks," not performing as strongly as anticipated.

45. However, these two accomplished salespersons combined accounted for over eight figures annually in revenue for Cosmic Pet.

46. In 2019, Mr. Sieber's sales were up over 30% and he received an approximately $40,000 bonus that year.

47. Although brick and mortar sales were down in 2020 due to the pandemic, Mr. Sieber's sales compared to 2019 were projected to be better than Cosmic Pet's as a company. In fact, Mr. Sieber exceeded company sales percentage in 2019 and was projected to exceed company sales numbers in 2020 and 2021.

48. Further, Mr. Callender, who managed all grocery accounts, was having a banner year when he was fired. His Kroger account was up 40% compared to 2019.

49.     Traditional brick and mortar sales were down in 2020, but grocery stores were deemed essential in all U.S. States, so Mr. Callender was projected to increase his sales 20% compared to 2019.

50.     Mr. Callender was the highest performing salesperson in the entire company at the time of his termination, with nobody performing better than him from January to October 2020.

51.     Following the loosening of pandemic-related restrictions in the United States, Cosmic Pet had its best monthly sales figures ever in July and August 2020 and Cosmic Pet appeared poised to recover much better than other companies from the economic consequences of the pandemic, led by the robust performance of Plaintiffs herein.

52.     In mid-November (the month *after* they were terminated), both Mr. Callender and Mr. Sieber received FedEx packages from Cosmic Pet's Leadership Team with an enclosed letter that read in part as follows:

> **As you will have probably already heard we had a spectacular third quarter of 2020 in terms of sales and profitability. Our sales over July, August and September totaled $57m which is a new record and smashed the previous record for a quarter (Q3 2019) by more than $9m. Our year on year growth in the quarter was almost 20% and now brings us into growth on a year to year basis.**

53.     In addition to the letter, which both plaintiffs were surprised to receive (since they had been terminated the previous month) but no doubt deserved based upon their continuous excellent performance, the package contained a specially designed t-shirt depicting a cat planting a flag on a planet that says "Record Sales" to commemorate the achievement. That is right – they each received a cat t-shirt for their excellent performance.  According to the congratulatory cover letter, the cat's name is "Star – our top dog." Here is a picture of the "Record Sales" t-shirt, highlighting the Star:

8



54. Cosmic Pet's earnings were, in fact, at record highs during the time Mr. Callender and Mr. Sieber were terminated, as evidenced (at least) by the letters and cat t-shirts thanking them for their significant contributions.

55. The roughly 60 accounts (accounting for $12 million in sales revenue) that Mr. Sieber and Mr. Callender were managing were divided among four, younger sales managers—each of whom benefitted from Mr. Sieber and Mr. Callender's years' long efforts to build sales relationships with their customers, but each of whom still did not have previous experience with the buyers or products.

56. The four younger sales managers were required to meet these existing customers to build new relationships, before even diving into the routine and day-to-day functions of a sales rep, such as learning how each account functions and determining which competitive products are in those markets, how each buyer merchandises the product, and how to complete internal product set-up forms, evaluate retail pricing structures, communicate shipping issues, introduce new products, and plan discontinued product transitions.

9

57. Cosmic Pet also hired two younger sales support staff members very shortly *before* terminating Mr. Sieber and Mr. Callender. Plaintiffs Sieber and Callender (and others) were advised about the hiring of these two younger sales employees by email dated September 30, 2020, the ***day before*** Plaintiffs were terminated.

58. Further, Cosmic Pet posted another advertisement for an additional two to four sales support staff after the terminations of Plaintiffs, all of whom are likely to be much younger than Mr. Sieber or Mr. Callender.

59. Certain sales support specialists, such as Matt Reid, aged 42, received some of Mr. Callender's accounts, demonstrating that the company reassigned the older, terminated employees' accounts to less qualified but younger individuals.

60. Both Mr. Sieber's and Mr. Callender's job performance was indisputably excellent under any relevant metric. In their jobs, evaluation of performance is for the most part much more objective – sales – than it would be for an employee in a different department of Cosmic Pet. Each had sales targets, consistently met or exceeded those targets, established significant revenue streams for the company, and built lasting relationships and goodwill between Cosmic Pet and its customers. There is no legitimate basis for selecting two well-performing employees in their 60's for termination while retaining all of the salesforce under the age of 60.

## VI.  STATEMENT OF CLAIMS FOR RELIEF

**CLAIM FOR RELIEF**
**(Violation of Age Discrimination in Employment Act ("ADEA"),**
**as amended, 29 U.S.C. §§ 621, *et seq.*)**

97. Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein.

98. Plaintiffs, both of whom were in their 60's and thus members of the protected age group under ADEA, were protected against age discrimination under the ADEA at all relevant times.

99. Defendant treated Plaintiffs less favorably than their similarly situated younger counterparts in the terms and conditions of their employment, and in the selection process in determining who would be terminated as part of any reduction in force.

100. At all relevant times, Plaintiffs performed the functions of their job competently and satisfactorily and were qualified for their positions.

101. Defendant terminated Plaintiffs' employment because of their ages. Age was the motivating factor in Defendant's decision to terminate each Plaintiff.

102. Defendant's articulated reasons for Plaintiffs' terminations are pretext for unlawful discrimination on the basis of their ages.

103. Defendant has engaged in a pattern and practice of age discrimination in the terms and conditions of employment, including but not limited to retaining younger employees who have made less revenue for the company than Plaintiffs' in their reduction of force.

104. Defendant is liable for the acts and omissions of its agents and employees.

105. Defendant either directly or by and through agents, discriminated against Plaintiffs on the basis of their ages and caused them severe injuries, damages, and losses.

106. Defendant's conduct was the proximate cause of Plaintiffs' injuries, damages, and losses.

107. Defendant's discriminatory conduct was willful and in knowing or reckless disregard of the requirements of the ADEA.

108. As a consequence of Defendant's violation of the ADEA, Plaintiffs have sustained significant economic and consequential damages.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in each of their favor and against Defendant, and award them all relief as allowed by law and equity, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to backpay and frontpay for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses recoverable by law;

d. Liquidated damages for all claims as allowed by law;

e. Reinstatement if appropriate under the circumstances at time of entry of order for relief;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs; and

h. Such further relief as justice requires.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 20th day of December 2021.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*
_____
David W. Killmer
Catherine Ordoñez
1543 Champa Street, Suite 400
Denver, CO 80202

(303) 571-1000
dkillmer@kln-law.com
cordoñez@kln-law.com

ATTORNEYS FOR PLAINTIFFS

.

13